IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAPITAL TELECOM HOLDINGS II LLC, PITTSBURGH SMSA LIMITED PARTNERSHIP, | ) ) ) | 2:20-CV-01181-CCW |
| | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| MUNICIPALITY OF BETHEL PARK, PENNSYLVANIA, MUNICIPAL COUNCIL OF THE MUNICIPALITY OF BETHEL PARK, | ) ) ) ) ) | |
| | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the Court are cross-motions for summary judgment by Plaintiffs Capital Telecom

Holdings II LLC ("Capital") and Pittsburgh SMSA Limited Partnership d/b/a Verizon Wireless

("Verizon Wireless") (together, the "Telecom Plaintiffs") and Defendants Municipality of Bethel

Park, Pennsylvania (the "Municipality") and the Municipal Council of the Municipality of Bethel

Park (the "Council") (collectively, the "Municipal Defendants"). *See* ECF Nos. 41 & 42. For the

reasons that follow, the Telecom Plaintiffs' Motion for Summary Judgment will be denied, and

the Municipal Defendants' Motion for Summary Judgment will be granted.

## I.     Background

### A.     Procedural Background

On August 10, 2020, the Telecom Plaintiffs filed a complaint against the Municipal

Defendants alleging violations of the Telecommunications Act of 1996 (the "TCA"), specifically

47 U.S.C. § 332(c)(7)(B)(iii) (Count I – Lack of Substantial Evidence) and 47 U.S.C. §

332(c)(7)(B)(i)(II) (Count II – Effective Prohibition).  Following discovery, the parties filed cross-motions for summary judgment.  ECF Nos. 41 & 42.

### B.    Undisputed Facts[1]

#### 1.    Effect of the Telecom Plaintiffs' Failure to File a Concise Statement of Material Facts

As a preliminary matter, the Telecom Plaintiffs did not file a concise statement of material facts pursuant Local Rule 56.B.1.  The Municipal Defendants contend that this fact alone should result in the denial of the Telecom Plaintiffs' Motion for Summary Judgment.  ECF No. 46 at 2.

Because the Telecom Plaintiffs failed to file a concise statement of material facts, the Municipal Defendants extracted the statements in the Telecom Plaintiffs' brief that contained citations to the record, *see* ECF No. 41-2 at 2–7 (section entitled "statement of undisputed material facts"), and responded to such statements as if they were concise statements of facts.  *See* ECF No. 45.

The Municipal Defendants are correct that "[c]ourts located in the Western District of Pennsylvania require strict compliance with the provisions of Local Rule 56."  *Peay v. Co Sager*, No. 1:16-cv-130, 2022 U.S. Dist. LEXIS 18345 (W.D. Pa. Feb. 1, 2022) (Lanzillo, M.J.) *report and recommendation affirmed by*, 2022 U.S. Dist. LEXIS 33036 (W.D. Pa. Feb. 23, 2022).  In this case, the Telecom Plaintiffs have provided no excuse for not filing a separate concise statement of material fact in accordance with Local Rule 56.  Further, when filing their reply brief, the Telecom

---

[1] The parties filed the same exhibits multiple times on the docket.  For simplicity, certain frequently repeated exhibits are organized by name as follows:  "Municipal Record" (ECF Nos. 50-7 to 50-15;  ECF Nos. 49-7 to 49-15;  ECF Nos. 41-3 to 41-11;  ECF No. 42-1;  ECF No. 44-7-15;  ECF No. 48-7-15) (the parties agree that this is the record of the entire proceedings before the Municipal Council);  "Conroy Declaration" (ECF No. 44-1;  ECF No. 48-1;  ECF No. 49-1);  "Conroy Expert Report" (ECF No. 41-12;  ECF No. 49-4;  ECF No. 50-5);  "Conroy Deposition Transcript" (ECF Nos. 41-14 to 41-15;  ECF No. 42-3);  "Beacom Declaration" (ECF No. 44-2;  ECF No. 48-2;  ECF No. 49-6);  "Moury Deposition Transcript" (ECF No. 41-16;  ECF No. 44-5;  ECF No. 48-5;  ECF No. 49-3;  ECF No. 50-4);  "Ross Deposition Transcript" (ECF No. 41-17;  EF No. 44-6;  ECF No. 48-6;  ECF No. 49-2;  ECF No. 50-3);  "Proposed Site(s) Location and Address" (ECF No. 41-13;  ECF No. 49-5;  ECF No. 50-6).

Plaintiffs inexplicably filed a separate "concise statement of material facts" with a list of different factual statements from those in Plaintiffs' opening brief, to which Defendants had previously responded. *Compare* ECF No. 49 *with* ECF No. 45.

In considering the cross-motions for summary judgment, the Court has the benefit of the Municipal Defendants' response to the Telecom Plaintiffs' "statement of undisputed material facts" section of their brief. That response, plus the concise statement of material facts filed with the Municipal Defendants' own motion, allows the Court to base its denial of the Telecom Plaintiffs' Motion for Summary Judgment on substantive grounds, as set forth below. Accordingly, while the Court properly could have denied the Telecom Plaintiffs' Motion for failure to file a concise statement of material facts in accordance with Local Rule 56, standing alone, it has elected to consider the facts addressed in Municipal Defendants' concise statement of material facts and the Telecom Plaintiffs' response thereto, *see* ECF No. 48 and the facts contained in the Telecom Plaintiffs' brief, which the Municipal Defendants extracted and responded to as if they were a concise statement of material facts, *see* ECF No. 45.[2] *Thompson v. Slatzer*, No. 1:19-cv-00282-SPB-RAL, 2021 U.S. Dist. LEXIS 18269, at *4 (W.D. Pa. Jan. 29, 2021) (Lanzillo, M.J.) *report and recommendation affirmed by*, 2021 U.S. Dist. LEXIS 28185, at *4 (W.D. Pa. Feb. 16, 2021) ("Where a party fails to comply with the requirements of Local Rules 56(B)(1)-(2), the Court may deny his motion for summary judgment."); c*f. Stuby v. Bedford Cty.*, No. 3:12-47, 2013 U.S. Dist. LEXIS 150681, at *4 n.1 (W.D. Pa. Oct. 21, 2013) (Gibson, J.) (holding that defendant' "failure to comply with the local rules alone could be a basis for denying their motion for summary judgment," but nonetheless ruling on the merits of the motion).

---

[2] Because Plaintiff's factual statements in ECF No. 49 were not submitted in compliance with the Local Rules and have not been responded to by the Municipal Defendants, the Court will not consider them for the purposes of this opinion.

Unless otherwise specified, the following facts, which are drawn from ECF No. 45 and 48, are undisputed.

### 2. The Application to Construct the Proposed Facility on the Subject Property

Capital Telecom builds, owns and operates towers and other wireless facilities that allow wireless carriers to create and maintain their network of cell sites, and leases space on its facilities to federal, state, and local first responders, law enforcement, and public safety agencies. ECF No. 45 ¶¶ 3, 4.

On September 11, 2019, Telecom Plaintiffs submitted a conditional use application for a new communications facility in the Municipality (the "Application"). ECF No. 45 ¶ 20; ECF No. 48 ¶ 2. The Telecom Plaintiffs "proposed to construct a 125-foot tall monopole tower-based wireless communication facility (130 feet in total height with lightning rod) that is capable of being extended to 135-feet tall (140 feet in total height with lightning rod)" (the "Proposed Facility") to be located on 5412 Enterprise Boulevard, Bethel Park, PA 15201" (the "Subject Property"). ECF No. 48 ¶ 3. The Subject Property is located in the Municipality's M-Manufacturing, Light Industrial ("MLI") zoning district and requires conditional use approval. ECF No. 45 ¶¶ 17, 18; ECF No. 48 ¶¶ 4, 5 (noting that the Municipality's zoning ordinance sets forth general and specific standards and criteria for considering conditional use approval for communications facilities). Section 69.80 of the Municipality's Zoning Ordinance (the "Zoning Ordinance") permits tower-based wireless communications facilities as a conditional use in the MLI zoning district so long as certain criteria are met. ECF No. 45 ¶ 19; ECF No. 48 ¶ 5; *see* Municipal Record at BP0001-0010.

### 3.   Municipal Meetings Regarding the Application

The Municipality of Bethel Park Planning Commission (the "Planning Commission") reviewed the Application at its September 25, 2019 meeting.  ECF No. 45 ¶ 23.  On October 8, 2019, the Municipality informed the Telecom Plaintiffs that the Application was considered "incomplete" based on advice from the Center for Municipal Solutions ("CMS"), a company that provides advice on radio frequency and telecommunications matters, whom the municipality had retained as an expert.[3]  ECF No. 45 ¶ 24.  On the same day, the Telecom Plaintiffs agreed to waive all applicable state and federal time limitations until a "complete" application was submitted to the Municipality.  ECF No. 45 ¶ 25.

On November 22, 2019, the Telecom Plaintiffs provided additional information (the "Supplemental Information") requested by CMS regarding the need for the Proposed Facility.  ECF No. 45 ¶ 26 (citing Municipal Record at BP0222–BP0256).  On December 5, 2019, the Municipality informed the Telecom Plaintiffs that the Application was deemed "complete" by CMS.  ECF No. 45 ¶ 27.

The Planning Commission reviewed the Application during its January 2 and 8, 2020 meetings and voted unanimously (8–0) to recommend approval of the Application to Council.  ECF No. 45 ¶¶ 28–29.

At the first public hearing on February 10, 2020, the Telecom Plaintiffs submitted the following into the record:  the Application;  the lease agreement with the Subject Property owner;  an email from Diamond Communications LLC to Telecom Plaintiffs regarding the possibility of co-locating on the Logan Road electric transmission towers;  and an email from the Municipality that considered the Application "complete."  ECF No. 45 ¶ 31.

---

[3] The Telecom Plaintiffs dispute CMS's credibility in these topics.  *See* ECF No. 45 ¶ 24; ECF No. 41-2 at 5–6.

During the February 10, 2020 hearing, certain members of the public voiced objections and/or concerns with respect to the Proposed Facility.  ECF No. 45 ¶ 44.  Prior to the meeting, two individuals expressed that they were in favor of the Application through a written comment.  ECF No. 45 ¶ 45 (citing Municipal Record BP0023–BP0024).  The Council did not render a decision at the conclusion of the February 10, 2020 hearing.  ECF No. 45 ¶ 32.

The next hearing was held on June 22, 2020.  ECF No. 45 ¶¶ 32–34.  At that hearing, the Municipality offered Lawrence "Rusty" Monroe, a CMS employee, to provide expert testimony regarding the Telecom Plaintiffs' Application. ECF No. 45 ¶ 35.  Mr. Monroe holds a Bachelor of Arts degree from Penn State University, but he is not a civil engineer, mechanical engineer, professional engineer in any capacity, or radio frequency engineer, and has no formal engineering education.  ECF No. 45 ¶¶ 36–38.  Mr. Monroe's credentials are summarized as having "been in this business for several decades, [plus the] number of applications [he has] reviewed, [and the fact that he has] never had a recommendation or conclusion legally challenged."  ECF No. 45 ¶ 40.

On July 13, 2020, the Council denied the Application by written decision ("the Denial").  ECF No. 45 ¶ 46.  The Telecom Plaintiffs dispute the legitimacy of the conclusions in the Denial as a "generalized" or an "everything but the kitchen sink approach." ECF No. 44 at 11–17.  However, the Telecom Plaintiffs do not dispute the fact that the Denial listed the below Zoning Ordinance provisions, which the Council determined the Telecom Plaintiffs had not met:

- 69.80.2.1(a) (standard of care)
- 69.80.2.1(c) (minimum height)
- 69.80.2.1(c)(1) (alternates)
- 69.80.2.1(c)(2) (propagation study)
- 69.80.2.1(c)(3) (aviation safety)
- 69.80.2.1(c)(4) (easement)
- 69.80.2.1(c)(5) (catchall)
- 69.80.2.1(d) (structural standards)
- 69.80.2.1(e) (compatibility)
- 69.80.2.1(f) (co-location and siting)
- 69.80.2.1(h) (gap in coverage)
- 69.80.2.1(j) (wind)
- 69.80.2.1(k) (height)
- 69.80.2.1(m) (interference)
- 69.80.2.1(t) (aviation safety)
- 69.80.2.1(z) (FCC License)

- 69.80.2.1(aa) (insurance)
- 69.80.2.1(cc) (engineer signature)
- 69.80.3.1.a (underground utilities)
- 69.80.3.1.c (lot area)
- 69.80.3.1.d (setback)

- 69.80.3.2.c (accommodate other antenna)
- 69.80.3.3.b, 69.80.3.6 (access road)
- 69.80.3.7 (parking)

ECF No. 48 ¶ 111.  The Telecom Plaintiffs also dispute the Municipal Defendants' finding that "granting the conditional use approval would be detrimental to the health, safety and welfare of the community."  ECF No. 48 ¶ 112.

Finally, the majority of the remaining facts addressed by the parties are not necessary to the Court's decision on summary judgment, because they relate to the significant gap/least intrusive alternative test, which both parties agree is no longer the applicable standard, as further discussed in the analysis section below.

## II.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 170 (3d Cir. 2017) (internal citations and quotations omitted).  "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.,* 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

The burden to establish that there is no genuine dispute as to any material fact "remains with 'the moving party regardless of which party would have the burden of persuasion at trial.'"

*Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (quoting *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987)).  That said, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'"  *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  Thus, while "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, summary judgment "requires the nonmoving party to go beyond the pleadings" and point to "'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted).  But, while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor…to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal citations and quotations omitted).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 requires the entry of summary judgment because such a failure "necessarily

renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23; *Jakimas v. Hoffman La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

"Where, as here, cross-motions for summary judgment are filed, 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Reynolds v. Chesapeake & Del. Brewing Holdings, LLC*, Civil Action No. 19-2184, 2020 U.S. Dist. LEXIS 83633, at *6 (E.D. Pa. May 12, 2020) (quoting *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016)).

## III.   Discussion

The parties each moved for summary judgment on both the lack of substantial evidence claim (Count I) under 47 U.S.C. § 332(c)(7)(B)(iii) and the effective prohibition claim (Count II) under 47 U.S.C. § 332(c)(7)(B)(i)(II).  The Court will first discuss the parties' cross-motions with respect to the lack of substantial evidence claim and will then turn to their cross-motions on the effective prohibition claim.

### A.   The Municipal Defendants Did Not Violate the Substantial Evidence Provision of the TCA

#### 1.   Substantial Evidence Claims Under the TCA

The TCA requires that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."  47 U.S.C. § 332(c)(7)(B)(iii).  "Subsection 332(c)(7)(B)(iii) is intended to provide procedural protections with respect to determinations of factual issues made by a state or local authority in the course of applying state and local zoning law."  *APT Pittsburgh Ltd. Partn. v. Penn Tp. Butler County of Pennsylvania*, 196 F.3d 469, 474 (3d Cir. 1999).  "Substantial evidence 'does not mean a large or

9

considerable amount of evidence, but rather such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Cellular Tel. Co. v. Zoning Bd. of Adjustment of the Borough of Ho-Ho-Kus*, 197 F.3d 64, 71 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)).

In determining whether there is substantial evidence in the local agency's record as whole to support the challenged decision, the Court applies a deferential standard of review and is guided by state and local law. *Cellular Tel. Co. v. Zoning Bd. of Adjustment (Ho-Ho-Kus)*, 197 F.3d 64, 71 (3d Cir. 1999); *Sprint Spectrum, L.P. v. Zoning Bd. of Adjustment of Paramus N.J.*, 606 F. App'x 669, 672 (3d Cir. 2015) ("[t]he TCA itself does not provide the legal basis to deny an application to construct a personal wireless facility. That authority must be found in state or local law." (citing *Sprint Spectrum, L.P. v. Willoth*, 176 F.3d 630, 644 (2d Cir. 1999)). In doing so, the Court may not "weigh the evidence contained in [the] record or [] substitute its own conclusions for those of the fact-finder," but where the record contains conflicting evidence, the Court must determine whether the fact-finder "adequately explain[ed] its reasons for rejecting or discrediting competent evidence.'" *Ho-Ho-Kus*, 197 F.3d at 71. Because the decision process itself is governed by applicable state and local laws, in determining whether the Municipal Council's decision here was supported by substantial evidence, the Court will analyze whether the decision accords with the Zoning Ordinance. *See id.* at 72.

### 2.     Conditional Use Requirements Under the Zoning Ordinance

A conditional use is not an exception to the Zoning Ordinance, "but rather a use to which [an] applicant is entitled provided the specific standards enumerated in the ordinance for the [conditional use] are met by the applicant." *Williams Holding Grp., LLC v. Bd. of Supervisors of W. Hanover Twp.*, 101 A.3d 1202, 1212 (Pa. Commw. Ct. 2014) (citation omitted); *see also*, *Ne.*

*Pa. SMSA LP v. Smithfield Twp. Bd. of Supervisors*, 433 F. Supp. 3d 703 (M.D. Pa. 2020).  Under Pennsylvania law, an applicant is required to "demonstrate that the use proposed … complies with the specific criteria of the particular ordinance," and "[a]n applicant who satisfies this prima facie burden is entitled to approval, unless objectors in the proceeding offer credible and sufficient evidence indicating that the proposed use would have a detrimental impact on public health, safety, and welfare."  *Williams Holding Grp., LLC*, 101 A.3d at 1212;  *TowerCo 2013 LLC v. Cecil Township Bd. of Supervisors*, 239 C.D. 2017, 2017 WL 6061846, at *2 (Pa. Cmmw. Dec. 8, 2017).

### 3.    The Municipal Defendants' Motion for Summary Judgment with respect to their Substantial Evidence Claim Will Be Granted

The Municipal Defendants contend that they are entitled to summary judgment on Count I – lack of substantial evidence under 47 U.S.C. § 332(c)(7)(B)(iii) – because their decision to deny the Application was supported by substantial evidence.  In the Denial, the Municipal Defendants identified 25 objective requirements of the Zoning Ordinance that the Telecom Plaintiffs failed to satisfy, *see* ECF No. 43 at 2–3, *see also* Municipal Record at BP0440, ¶ 12.  They discuss a subset of these requirements in their Motion for Summary Judgment, notably that:  (1) the Telecom Plaintiffs did not demonstrate a significant gap in service to be resolved through the least intrusive alternative (§ 69.80.2.1(h));  (2) the Telecom Plaintiffs designed the Proposed Facility pursuant to an outdated standard (§§ 69.80.2.1(a), 69.80.2.1(d), 69.80.2.1(j));  (3) the Proposed Facility did not comply with the setback requirements (§ 69.80.3.1.d);  (4) the Proposed Facility did not comply with parking requirements (§ 69.80.3.7);  and (5) the Proposed Facility would "stick out like a sore thumb" (§ 69.80.2.1(e)).  ECF No. 43.  Telecom Plaintiffs' brief in opposition addresses each of these criteria, except the parking requirement, which is addressed in their response to the Municipal Defendants' Concise Statement of Material Facts.  *See* ECF No. 44 at 11–17.

The Telecom Plaintiffs are entitled to the conditional use only if they meet "the specific standards enumerated in the ordinance." *Williams Holding Grp., LLC*, 101 A.3d at 1212; *Sluciak v. Cecil Twp. Bd. of Supervisors*, 223 A.3d 725, 730 (Pa. Commw. Ct. 2019) (plaintiff must "prov[e] compliance with the specific, objective criteria of the applicable zoning ordinance"). Here, taking the facts in the light most favorable to Telecom Plaintiffs as the non-moving party, with respect to at least two provisions of the Zoning Ordinance, Defendants have shown that the Council's Denial due to the Telecom Plaintiffs' failure to meet those requirements was supported by substantial evidence.

### i. There Was Substantial Evidence that the Proposed Facility Did Not Comply with the Setback Requirements (§ 69.80.3.1.d)

Among other requirements, Section 69.80.3.1.d of the Zoning Ordinance requires that:

> [t]he minimum distance between the base of a tower-based [Wireless Communication Facilities ("WCF")] and any adjoining property line or street right-of-way line shall equal 110% of the proposed WCF structure height, unless it is demonstrated to the reasonable satisfaction of Council that in the event of failure the WCF is designed to collapse upon itself within a setback area less than the required minimum setback without endangering such adjoining uses and their occupants.

ECF No. 48 ¶ 71; Municipal Record at BP0428–BP0429, ¶ 273; Municipal Record at BP0078.

The Court finds that Council's decision that the Telecom Plaintiffs did not meet the 110% setback requirement is supported by substantial evidence. In response to the Municipal Defendants' concise statement of material facts, the Telecom Plaintiffs dispute the fact that the "Proposed Facility does not meet the required 110% setbacks to the east, south, west or north," ECF No. 48 ¶ 73, without citing any evidence that the Proposed Facility meets the 110% setback requirement. This dispute is not genuine, because the Telecom Plaintiffs' Application affirmatively stated that "[t]he distance to the base of the tower to the adjoining property lines measures 142.28' to the east, 51.1' to the south, 57.73' to the west, and 38.91' to the north," *see*

Municipal Record at BP0078, BP0427–BP0429, ¶¶ 265, 274, which the Municipal Defendants found was less than 110% of the Proposed Facility's height.  *See* Municipal Record at BP0427–BP0431, ¶¶ 268–71 (noting that 110% of the Proposed Facility height is 143 to 154 feet depending on whether the Proposed Facility was extended to full height).

Further, the Court finds that Council's decision that the Telecom Plaintiffs did not satisfy the setback requirement through the alternate method contemplated by the Zoning Ordinance is also supported by substantial evidence.  To satisfy the setback requirement through the alternative method, Telecom Plaintiffs must have "demonstrated to the reasonable satisfaction of Council that in the event of failure the [Wireless Communication Facility] is designed to collapse upon itself within a setback area less than the required minimum setback without endangering such adjoining uses and their occupants."  § 69.80.3.1.d.  On this point, the Telecom Plaintiffs attached a letter from an engineer stating that:

> the most likely location of the failure would be within the monopole shaft, above the base plate. Assuming that the wind pressure profile is similar to that used to design the monopole, the monopole will buckle at the location of the highest combined stress ratio within the monopole shaft. This is likely to result in the portion of the monopole above leaning over and remaining in a permanently deformed condition.... This would effectively result in a 35 ft fall zone at ground level.

*See* Municipal Record at BP0193;  *see also*, Municipal Record at BP0430, ¶ 284.  The parties dispute whether the Council properly found this statement to be uncredible.  *Compare* ECF No. 43 at 12–13 *and* Municipal Record at BP0430–BP0431, ¶¶ 284–92 (finding that the engineer did not testify, the exhibit was not credible, and that CMS representative's testimony was credible) *with* ECF No. 44 at 15 (contending that because the CMS representative has no engineering degree it is not substantial evidence compared to the engineer's report).

However, the credibility of this statement (and the CMS representative's) is not necessary to the Denial, because the Council found that even if the statement *were* credible, the "35-foot fall zone … would result in a fall outside of the Leased Premises and, if it fell to the east, the Communications Facility would hit the existing structure on the Property which is only 29.31 feet away from the Communications Facility."  Municipal Record at BP0430, ¶¶ 287–89;  *see also*, ECF No. 43 at 13.  Although the Telecom Plaintiffs dispute this finding, they do so by pointing out that the property that is only 29.31 feet away is owned by their future landlord who therefore "obviously consents to its location on the property."  *See* ECF No. 44 at 15; ECF No. 48 ¶ 77. However, the Zoning Ordinance's alternative setback requires a determination that any collapse would occur "without endangering such adjoining uses and their occupants," not whether a landlord consents to any potential collapse onto the landlord's own structure. § 69.80.3.1.d.  Thus, even when the Council assumed that the 35-foot fall zone established by the Telecom Plaintiff's engineer was credible, such a fall zone did not demonstrate that a collapse would not "endanger[] such adjoining uses and their occupants" due to the undisputed fact that the Subject Property's landlord's structure was only 29.31 feet away from the Proposed Facility. *Cf. Ne. Pa. SMSA LP v. Smithfield Twp. Bd. of Supervisors*, 433 F. Supp. 3d 703 (M.D. Pa. 2020) (finding legal error when defendant board considered whether the tower would hit an adjacent manufacturing building when the zoning ordinance did not contain any specific tower setback requirement from other buildings/structures and where the only evidence that the tower could collapse on another building was the non-testimonial commentary of board member).

In conducting its deferential review of the Denial, the Court finds that the Council's determination that the setback condition was not met in light of the fact that landlord's structure was located at only 29.31 feet from the proposed tower, i.e. within the 35-foot fall zone, was based

14

on such "evidence as a reasonable mind might accept as adequate to support a conclusion." *Ho-Ho-Kus*, 197 F.3d, at 71. Thus, Municipal Defendants' Denial with respect to the setback condition of the Zoning Ordinance (§ 69.80.3.1.d) was supported by substantial evidence. Though the Court could grant summary judgment in favor of the Municipal Defendants based on this finding alone, the Council's decision on a separate Zoning Ordinance provision, discussed below, provides an additional basis for granting summary judgment on Count I – lack of substantial evidence under 47 U.S.C. § 332(c)(7)(B)(iii).

### ii. There Was Substantial Evidence that Telecom Plaintiffs Did Not Comply with Parking Requirements (§ 69.80.3.7)

The Council also denied the Application on the grounds that the Telecom Plaintiffs did not comply with parking requirements (§ 69.80.3.7 of the Zoning Ordinance). The Court finds that the Council adequately explained its reasons for this finding despite competing evidence, such that the Denial was supported by substantial evidence.

As discussed above, the Telecom Plaintiffs did not address the Municipal Defendants' argument regarding the applicable parking requirements in their responsive brief, but rather their response to the Municipal Defendants' Concise Statement of Material Facts. In doing so, the Telecom Plaintiffs state that the facts related to parking are "Disputed," because "the Site Plan complies with all Code Requirements and is stamped by a registered professional engineer in Pennsylvania." ECF No. 48 at ¶¶ 84–88 (citing Municipal Record, at BP0263–BP0276).

With respect to parking, Section 69.80.3.7 provides that "[f]or each tower-based WCF greater than 40 feet in height, there shall be two off-street parking spaces which meet the criteria for parking spaces as set forth in the Bethel Park Zoning Code." Municipal Record at BP0437, ¶ 346. The Application stated that the "[t]wo parking locations are identified on Page C-1 of the Zoning Drawings." Municipal Record at BP0437, ¶ 347.

The parties do not dispute the applicable parking requirement: "when the parking angle is 90 degrees…, the Aisle Width must be 24 feet and the space size must be 9.5 feet x 18 feet." ECF No. 48 ¶ 83.  However, the Council found that this condition was not met because the aisle width was not identified in the Application and further, the Lease Agreement proposes only a 20-foot access easement accessing the parking.  Municipal Record at BP0437, ¶¶ 349–53.  At summary judgment, instead of substantively disputing the Municipal Defendants' conclusion on this point— for example, by disputing the applicability of the parking provisions cited by the Municipal Defendants or pointing to evidence within the Municipal Record showing the actual size of the aisle width—the Telecom Plaintiffs state in a conclusory manner that "the Site Plan complies with all Code Requirements and is stamped by a registered professional engineer in Pennsylvania." ECF No. 48 at ¶¶ 84–88 (citing Municipal Record, at BP0263–BP0276).

In conducting its deferential review of the Denial, the Court finds that the Council "adequately explain[ed] its reasons for rejecting or discrediting competent evidence." *Ho-Ho-Kus*, 197 F.3d at 71.  Although the plans were stamped by a Pennsylvania engineer, the Council explained how those plans did not indicate the aisle width.  *See* Municipal Record, at BP0263– BP0276.  The Council further explained that the Lease Agreement, another document submitted by the Telecom Plaintiffs in support of their Application, further called into question whether the aisle width was 24 feet, because the access easement provision allowed only for an easement of 20 feet.  Municipal Record, at BP0437 ¶¶ 346–53.

Thus, the Court finds that the Municipal Defendants' Denial with respect to the parking requirements of the Zoning Ordinance (§ 69.80.3.7) was supported by substantial evidence and will grant summary judgment in favor of the Municipal Defendants on Count I – lack of substantial evidence under 47 U.S.C. § 332(c)(7)(B)(iii).

16

### 4.   The Telecom Plaintiffs' Motion for Summary Judgment with respect to their Substantial Evidence Claim Will Be Denied

The Telecom Plaintiffs cross-moved for summary judgment on Count I, asserting that Council's Denial was not supported by substantial evidence. The Court has found that, viewing the facts in the light most favorable to Telecom Plaintiffs, Defendants are entitled to summary judgment on this issue, because at least two of the conditional use criteria set forth in the Denial were supported by substantial evidence. Considering the Telecom Plaintiffs' cross-motion, if we were to take the facts in the light most favorable to Defendants as the non-moving party, we would reach the same result – that the Denial was supported by substantial evidence.

Further, there are numerous other Zoning Ordinance criteria set forth in the Denial that the Telecom Plaintiff have not addressed or questioned. Rather, the Telecom Plaintiffs attack the Denial as lacking substantial evidence as a whole, rather than each of the Zoning Ordinance criteria that the Council found to be deficient. *See Sluciak v. Cecil Twp. Bd. of Supervisors*, 223 A.3d 725, 734 (Pa. Commw. Ct. 2019) (noting that an objector to a wireless tower did not challenge the "[s]upervisors' conclusion that [the service provider] satisfied each [of the safety and technical] requirement[s].").

Therefore, Plaintiff's cross-motion for summary judgment on Count I – lack of substantial evidence under 47 U.S.C. § 332(c)(7)(B)(iii) must be denied.

### B.   The Municipal Defendants Did Not Violate the Effective Prohibition Provision of the TCA

We turn now to the appropriate standard of review for an effective prohibition claim under 47 U.S.C. § 332(c)(7)(B)(i)(II) and will then addresses the parties' cross-motions for summary judgment on Count II (effective prohibition).

### 1.    Scope of Review

Subsection 332(c)(7)(B)(i)(II) of the TCA provides that "(i) [t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof -- . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. 332(c)(7)(B)(i)(II);  *Nextel W. Corp. v. Unity Twp.*, 282 F.3d 257, 265 (3d Cir. 2002) ("The statute does not define what constitutes prohibitive effect…").  This provision preserves local governments' authority to regulate zoning, while placing "limitations on the general authority of … local governments or instrumentalities thereof to make 'decisions regarding the placement, construction, and modification of personal wireless service facilities.'" *Liberty Towers, LLC v. Zoning Hearing Bd. of Lower Makefield Twp.*, 748 F. Supp. 2d 437, 441 (E.D. Pa. 2010) (quoting 47 U.S.C. § 332(c)(7)(A)).

In determining whether a local government's regulation violates the effective prohibition provision of the TCA, the Court conducts a de novo review "and is not limited to the record compiled by the state or local authority."  *Sprint Spectrum, L.P. v. Zoning Bd. of Adjustment of Paramus N.J.*, 606 F. App'x 669, 671 (3d Cir. 2015) (citing *APT Pittsburgh Ltd. Pshp. v. Penn Twp. Butler Cty.*, 196 F.3d 469, 475 (3d Cir. 1999).  Further, the district court does not need to give deference to local findings.  *Ho-Ho-Kus*, 197 F.3d at 71 (3d Cir. 1999).

For the purposes of resolving the cross-motions with respect to the effective prohibition claim, the Court will undertake a *de novo* review.

### 2.    Effective Prohibition Standard of the TCA

The legal test for effective prohibition has recently changed.  Prior to the change, in the Third Circuit, a "local government [] effectively prohibited the provision of wireless services where a carrier has demonstrated that (1) its facility will fill a significant gap in service, and (2)

18

the manner in which it proposes to fill the significant gap in service is the least intrusive on the values that the denial sought to serve." *Sprint Spectrum, L.P. v. Zoning Bd. of Adjustment of Paramus N.J.*, 606 F. App'x 669, 671 (3d Cir. 2015) (citing *APT Pittsburgh Ltd.*, 196 F.3d at 480). Under that standard, "the relevant gap, if any, [was] a gap in the service available to remote users. Not all gaps in a particular provider's service [] involve a gap in the service available to remote users." *Omnipoint Communs. Enters., L.P. v. Zoning Hearing Bd. of Easttown Twp.*, 331 F.3d 386, 398 (3d Cir. Pa. 2003).

In addressing a circuit split on this issue in 2009, the Federal Communications Commission ("FCC") issued a declaration *In re Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B)* (the "2009 Declaratory Ruling") determining that a state or local authority could not prohibit the provision of services of individual carriers solely on the basis of the presence of another carrier in the jurisdiction. 24 FCC Rcd 13994, 14017 (F.C.C. November 18, 2009). Following the 2009 Declaratory Ruling, a carrier could succeed by showing a significant gap in its *own* coverage, rather than showing a significant gap in the coverage of all providers. *Liberty Towers, LLC v. Zoning Hearing Bd. of the Twp. Lower Makefield*, 748 F. Supp. 2d 437, 44-45 (E.D. Pa. 2010) (giving deference to the 2009 Declaratory Ruling). The 2009 Declaratory Ruling left intact the local and state authorities "consideration of and action on the issues that traditionally inform local zoning regulation." 2009 Declaratory Ruling at 14,018. Specifically, the FCC noted that "where a bona fide local zoning concern, rather than the mere presence of other carriers, drives a zoning decision, it should be unaffected by" the 2009 Declaratory Ruling. *Id.* at 14,018. In doing so, the FCC reiterated that "the denial of an application may sometimes establish a violation of Section 332(c)(7)(B)(ii) if it demonstrates a policy that has the effect of prohibiting the provision

of personal wireless services." *Id.* at 14,019 n. 196 (citing cases applying the significant gap/least intrusive alternatives standard).

On September 18, 2018, the FCC adopted *In re Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Inv.*, 33 F.C.C. Rcd. 9,088 (2018) (the "2018 Declaratory Ruling"), which expressly rejected the "significant gap" test and "reaffirm[ed] . . . that a state or local legal requirement constitutes an effective prohibition if it 'materially limits or inhibits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment.'" *Id.* at 9,102 (quoting *In re California Payphone Ass'n*, 12 F.C.C. Rcd. 14,191, 14,206 (1997)); *see also*, *New Cingular Wireless PCS LLC v. Zoning Bd. of Adjustment*, 469 F. Supp. 3d 262 (D.N.J. 2020) (finding that the 2018 Declaratory Ruling "expressly rejected decisions of Courts of Appeals—including the Third Circuit—that had required a plaintiff to show a 'coverage gap' before a state or local requirement could amount to an effective prohibition.").

In the 2018 Declaratory Ruling, the FCC found that the "coverage gap" analytical framework courts were employing did not reflect the current wireless marketplace, in which there are "a wide variety of offerings with differing service characteristics and deployment strategies." 2018 Declaratory Ruling at 9,107.  Thus, under the 2018 Declaratory Ruling, "a state or local legal requirement could materially inhibit service in numerous ways—not only by rendering a service provider unable to provide an existing service in a new geographic area or by restricting the entry of a new provider in providing service in a particular area, but also by materially inhibiting the introduction of new services or the improvement of existing services." *Id.*  Under the materially inhibit test, "the prohibition does not have to be complete or 'insurmountable' to constitute an effective prohibition." 2018 Declaratory Ruling at 9,108.

The 2018 Declaratory Ruling applied this revised standard to certain factual scenarios (including fees, aesthetics, and undergrounding requirements for small wireless facilities), but left other instances to be "addressed case-by-case as they arise or otherwise are taken up by the Commission or courts in the future."  2018 Declaratory Ruling at 9,109 at n. 102.

In expanding the "variety of activities related to [the] provision of a covered service" in which a provider could be effectively prohibited (such as, providing existing service in a new geographic area, restricting the entry of a new provider in providing service in a particular area, restricting the introduction of new services, or restricting the improvement of existing services), the 2018 Declaratory Ruling did not explicitly discuss the effects of the ruling on state and local zoning concerns.  2018 Declaratory Ruling, 9,105.

The few cases within this Circuit addressing the 2018 Declaratory Ruling have yet to apply the materially inhibit standard.[4]  *See T-Mobile, Ne., LLC v. City of Wilmington,* No. 16-1108-ER, 2020 U.S. Dist. LEXIS 44981, at *15–16 (D. Del. Mar. 16, 2020) (finding that the 2018 Declaratory Ruling standard did not apply retroactively because "the ruling makes substantive changes to the law and alters existing obligations");  *New Cingular Wireless PCS LLC v. Zoning Bd. of Adjustment*, 469 F. Supp. 3d 262, 277–78 (D.N.J. 2020) (same);  *see also*, *ExteNet Sys. v. City of E. Orange*, No. 2:19-cv-21291 (WJM), 2020 U.S. Dist. LEXIS 231126 (D.N.J. Dec. 9,

---

[4]  Neither party has argued that the 2018 Declaratory Ruling is not entitled to deference under *Chevron*.  "*Chevron* established a familiar two-step procedure for evaluating whether an agency's interpretation of a statute is lawful. At the first step, we ask whether the statute's plain terms 'directly addres[s] the precise question at issue.'  If the statute is ambiguous on the point, we defer at step two to the agency's interpretation so long as the construction is 'a reasonable policy choice for the agency to make.'"  *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 986 (2005) (quoting *Chevron U.S.A. v. Nat'l Res. Def. Council*, 467 U.S. 837, 845 (1984)).  Here, the statute's plain terms do not precisely address the meaning of "effect of prohibiting."  Further, it is reasonable for the 2018 Declaratory Ruling to align the meaning of Section 332(c)(7)(B)(i)(II)'s "effect of prohibiting" language with the identical language contained in Section 253 of the TCA.  *See also*, *Up State Tower Co., LLC v. Town of Southport*, 412 F. Supp. 3d 270, 292 n.6 (W.D.N.Y. 2019) (finding that the "the FCC's interpretations in the 2018 [Declaratory] Ruling are entitled to deference under *Chevron*" but noting that there is a question as to the retroactivity of the 2018 Declaratory Ruling).

2020) (applying the 2018 Declaratory Ruling's presumption that a state or local government's failure to act within the Small Wireless Facility shot clock is a "presumptive prohibition on the provision of personal wireless services within the meaning of Section 332(c)(7)(B)(i)(II)." (citing 2018 Declaratory Ruling, ¶¶ 118–19)).  Here, neither party disputes that the "materially inhibits" standard from the 2018 Declaratory Ruling applies, but neither party discusses the application of this standard to the facts at issue with much detail.  ECF No. 43 at 16–19, ECF No. 41-2 at 9. Instead, both parties focus on the prior standard that was expressly rejected by the FCC—whether there is a significant gap in service and whether the manner in which the Telecom Plaintiffs propose to fill the alleged significant gap is the least intrusive.  *See* ECF No. 43 at 19–20;  ECF No. 41-2 at 9–17.

### 3.    The Telecom Plaintiffs' Motion for Summary Judgment with respect to their Effective Prohibition Claim Will Be Denied

Although the Telecom Plaintiffs outline the history leading up to the 2018 Declaratory Ruling, *see* ECF No. 41-2 at 7–9, their argument for summary judgment rests on one conclusory statement:  "Based upon [the] expert review of the relevant data, the Denial of the Application materially inhibits Verizon's ability to provide its federally licensed wireless services."  *See* ECF No. 41-2 at 9.  The Telecom Plaintiffs submit an expert report from Richard Conroy (the "Conroy Expert Report").  Mr. Conroy is the president of a "company specializing in the provision of radio frequency engineering, design, and consulting services to the wireless communications industry." Conroy Expert Report ¶ 1.  In his report Mr. Conroy used a modeling program that is proprietary to Verizon Wireless to evaluate the purported gap in coverage.  ECF No. 45-4 ¶¶ 1-4; ECF No. 45-3 ¶ 5.

As a threshold matter, the Municipal Defendants challenge the Conroy Expert Report as a whole and argue for its exclusion because "the underlying data that purportedly supports the

expert's conclusions was not provided on the basis that such information is confidential, proprietary information." ECF No. 46 (citing Fed. R. Civ. P. 26(a)(2)(B)). The Telecom Plaintiffs did not address this argument in their reply brief, despite the fact that their Motion for Summary Judgment on the effective prohibition claim relies almost entirely on the conclusions contained in the Conroy Expert Report. ECF No. 41-2 at 7–17.[5] This is surprising considering that it is undisputed that the Telecom Plaintiffs "relied exclusively [on] computer generated propagation maps to demonstrate a significant gap in coverage," and did not provide any other evidence such as "drive tests to measure actual performance data." ECF No. 48 ¶¶ 8–9, 15. Further, the Telecom Plaintiffs do not meaningfully dispute that in "the [h]earings before [] Council, [the Telecom] Plaintiffs provided no information as to the number of users affected by the purported gap or whether the gap covered a busy highway or vacant land"; instead, they argue that such information is immaterial because this action is focused on the "effect of the denial." ECF No. 48 ¶ 10. In light of Municipal Defendants' challenge to the admissibility of the report, compounded by the Telecom Plaintiffs' failure to meaningfully respond to such challenge, it appears that the Conroy Expert Report may not be admissible and therefore that it would not be appropriate for the Court to consider it at summary judgment. *Smith v. Kyler*, 295 F. App'x 479, 481 (3d Cir. 2008) ("Only evidence admissible at trial may be considered in ruling on a motion for summary judgment.") (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n.1 (3d Cir. 1996)).

---

[5] In response to the Municipal Defendants' concise statement of material facts, the Telecom Plaintiffs do not meaningfully address the Municipal Defendants' argument that the Telecom Plaintiffs improperly withheld the underlying data by asserting in their discovery responses that it was "confidential, proprietary or trade secret information." ECF No. 48 ¶ 11. Instead, the Telecom Plaintiffs argue that they "have provided everything not covered by privilege, which the [Municipal] Defendants did not dispute during discovery." ECF No. 48 ¶ 11. This response, which focuses on privilege, does not address the prior reasons for non-disclosure during discovery, notably that the underlying data was "confidential, proprietary or trade secret information." Further, Rule 26(c)(1) allows the "party … from whom discovery is sought" to seek a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Telecom Plaintiffs did not invoke that rule here.

Even if the Court were to consider the Conroy Expert Report, the Telecom Plaintiffs have not articulated how the undisputed material facts support their effective prohibition claim under the new standard—that is, how the Denial "'materially limits" their ability as a competitor or the ability of any other competitor or potential "competitor to compete in a fair and balanced legal and regulatory environment.'"  2018 Declaratory Judgment at 9,102 (quoting *California Payphone*, 12 F.C.C. Rcd. at 14,206).

Essentially, the Conroy Expert Report analyzes the current and proposed 4G LTE coverage and concludes that the Denial "prevents Verizon Wireless from meeting their service and performance goals," which "is critical to Verizon Wireless's customers and is essential to Verizon Wireless's ability to compete effectively with its functionally equivalent competitors in a fair and balanced legal and regulatory environment."  Conroy Expert Report, ¶¶ 15–18, 68.

Apart from the Conroy Expert Report's short statement that the inability to meet service and performance goals necessarily materially inhibits the ability to compete in a fair and balanced legal and regulatory environment, both the Telecom Plaintiffs and the Conroy Expert Report instead focus on the significant gap and least intrusive means test, which is no longer the appropriate test.  *Id.* at 9–17;  *see also* ECF No. 50 at 2;  *see generally*, Conroy Expert Report.

Here, if the Court were to accept the Telecom Plaintiffs' argument that every time a service provider is unable to meet their service and performance goals, a state or local authority necessarily prevented such provider from competing "in a fair and balanced legal and regulatory environment," *see* Conroy Expert Report, ¶¶ 15–18, that interpretation would short-circuit the state or local regulatory authority established in the TCA through a careful balancing of federal, state and local authority.  The 2018 Declaratory Ruling broadened the "variety of activities" in which a provider could be effectively prohibited (for example, as discussed above, with respect to the

expansion of service to a new geographic area, the entry of a new provider in a particular area, the introduction of new services, or the improvement of existing service), which would encompass the Telecom Plaintiffs' attempt to fill a coverage gap here.  However, the Telecom Plaintiffs' seek to prove an effective prohibition by focusing on the old significant gap/least intrusive alternatives test,  rather than the new standard.  They point to no facts regarding how the Denial "materially inhibits" any *current or potential competition* in a "fair and balanced legal and regulatory environment in the [given] market."  Thus, the Telecom Plaintiffs' motion for summary judgment with respect to the effective prohibition claim under 47 U.S.C. § 332(c)(7)(B)(i)(II) will be denied.

### 4.    The Municipal Defendants' Motion for Summary Judgment with respect to their Effective Prohibition Claim Will Be Granted

The Municipal Defendants contend that the Denial of the Application does not amount to an effective prohibition, because the Telecom Plaintiffs have failed to meet the objective standards of the Zoning Ordinance.  ECF No. 43 16–19.

In doing so, the Municipal Defendants contend that the 2018 Declaratory Ruling keeps intact the idea that a denial based on legitimate zoning restrictions does not materially inhibit or limit the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment.  ECF No. 43 at 18.

As discussed in the context of the Telecom Plaintiffs' motion for summary judgment, the Telecom Plaintiffs point to no facts regarding how the Denial materially inhibits or limits competition in a fair and balanced legal and regulatory environment.  *See Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)) ("[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'").

25

Thus, the Municipal Defendants' motion for summary judgment with respect to the effective prohibition claim under 47 U.S.C. § 332(c)(7)(B)(i)(II) will be granted.

## IV.     Conclusion

For the foregoing reasons, the Telecom Plaintiffs' Motion for Summary Judgment will be DENIED, and the Municipal Defendants' Motion for Summary Judgment will be GRANTED.


DATED this 29th day of March, 2022.


BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge


cc (via ECF email notification):

All Counsel of Record